**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Doug Flesher,<br><br>   Plaintiff,<br><br>vs.<br><br>Michael J. Astrue, Commissioner of Social Security,<br><br>   Defendant. | No. CV-10-722-PHX-GMS<br><br>**ORDER** |

Pending before the Court is the appeal of Plaintiff Doug Flesher, which challenges the Social Security Administration's decision to deny benefits. (Doc. 15). For the reasons set forth below, the Court affirms that decision.

**BACKGROUND**

At the time of the Commissioner's final decision in this case, Plaintiff was a 56-year old male with an eleventh grade education who had previously worked as a drywall laborer. On April 12, 2006, Plaintiff applied for supplemental security income, alleging a disability onset date of August 21, 2001. (R. at 9). Plaintiff claimed to be disabled due to back and neck problems, recurring bilateral hernias in his groin, and depression. Plaintiff's claim was denied both initially on October 19, 2006, and upon reconsideration on March 27, 2007. (*Id.*). Plaintiff then appealed to an Administrative Law Judge ("ALJ"). (R. at 58) The ALJ conducted a hearing on the matter on February 25, 2008. (R. at 15–39). On April 4, 2008, the ALJ issued a decision, finding Plaintiff not disabled. (R. at 9–14).

In evaluating whether Plaintiff was disabled, the ALJ undertook the five-step sequential evaluation for determining the existence of a disability.[1] (R. at 9–14). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 12, 2006, the application date. (R. at 11). At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: back disorder, history of hernias, arthritis, and history of alcohol abuse (with current usage). (*Id.*). The ALJ also determined that claimant's wrist disorder does not meet the durational requirement, and that he has no medically determinable mental impairment. (*Id.*). At step three, the ALJ determined that none of these impairments, either alone or in combination, met or equaled any of the Social Security Administration's listed impairments. (*Id.*)

At that point, the ALJ made a determination of Plaintiff's residual functional capacity

---

[1] The five-step sequential evaluation of disability is set out in 20 C.F.R. § 404.1520 (governing disability insurance benefits) and 20 C.F.R. § 416.920 (governing supplemental security income). Under the test:

> A claimant must be found disabled if she proves: (1) that she is not presently engaged in a substantial gainful activity[,] (2) that her disability is severe, and (3) that her impairment meets or equals one of the specific impairments described in the regulations. If the impairment does not meet or equal one of the specific impairments described in the regulations, the claimant can still establish a prima facie case of disability by proving at step four that in addition to the first two requirements, she is not able to perform any work that she has done in the past. Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy. This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education.

*Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007) (internal citations and quotations omitted).

("RFC"),[2] concluding that Plaintiff could perform "medium work as defined in 20 C.F.R. 416.967(c)." (*Id.*). Specifically, the ALJ found that the claimant is "able to sit for six hours total in an eight-hour workday, stand for six hours total in an eight-hour workday, walk for six hours total in an eight-hour workday, and lift and/or carry 25 pounds frequently and 50 pounds occasionally." (*Id.* at 11). It was further determined that claimant "is able to do frequent bending and occasional climbing, crawling, and kneeling." (*Id.*). The ALJ thus determined at step four that Plaintiff retained the RFC to perform his past relevant work as a construction helper, which the vocational expert testified is light to heavy in exertional level, because the claimant could do this work at the light to medium level of exertion. (R. at 13). Because the ALJ determined that Plaintiff could still perform his past relevant work in construction, there was no need to address whether Plaintiff was capable of making an adjustment to other jobs and whether such jobs existed in significant numbers in the national economy. *See* 20 C.F.R. § 416.920(a)(4)(iv). Given this analysis, the ALJ concluded that Plaintiff has not been under a disability since April 12, 2006. (*Id.* at 14).

The Appeals Council declined to review the decision, making the ALJ's decision final for purposes of judicial review under 42 U.S.C. § 405(g). (R. at 1); *see* 20 C.F.R. § 404.981 (explaining the effect of a disposition by the Appeals Council). Plaintiff filed the complaint underlying this action on March 31, 2010, seeking this Court's review of the ALJ's denial of benefits.[3] (Doc. 1). The matter is now fully briefed before this Court. (Doc. 15, 19, 20).

## DISCUSSION

**I.    Standard of Review**

The Court has the "power to enter, upon the pleadings and transcript of record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social

---

[2] RFC is the most a claimant can do despite the limitations caused by his impairments. *See* S.S.R. 96-8p (July 2, 1996).

[3] Plaintiff was authorized to file this action by 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action . . . .").

1 Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).  A
2 reviewing federal court addresses only the issues raised by the claimant in the appeal from
3 the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  A federal
4 court may "set aside a denial of benefits only if it is not supported by substantial evidence
5 or is based on legal error." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).
6 "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, i.e.,
7 such relevant evidence as a reasonable mind might accept as adequate to support a
8 conclusion." *Id.* (citing *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990)).

9 The Court may not "substitute [its] own judgment for that of the ALJ." *Id.*  The ALJ
10 is responsible for resolving conflicts in testimony, determining credibility, and resolving
11 ambiguities.  *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  "When the
12 evidence before the ALJ is subject to more than one rational interpretation, [the Court] must
13 defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198
14 (9th Cir. 2004).  At the same time, the Court "must consider the entire record as a whole and
15 may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Id.* (citing
16 *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).  The Court also may not "affirm the
17 ALJ's . . . decision based on evidence that the ALJ did not discuss." *Connett v. Barnhart*,
18 340 F.3d 871, 874 (9th Cir. 2003); *see also SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)
19 (emphasizing the fundamental rule of administrative law that a reviewing court "must judge
20 the propriety of [administrative] action solely by the grounds invoked by the agency" and
21 stating that if "those grounds are inadequate or improper, the court is powerless to affirm the
22 administrative action").  Even if the ALJ erred, however, "[a] decision of the ALJ will not
23 be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir.
24 2005).

25 **II.     Analysis**

26 Plaintiff argues that the ALJ erred by: (A) rejecting the opinions of treating physicians
27 (Doc. 15 at 6–8), (B) misinterpreting evidence related to the claimant's ability to work (*Id.*
28 at 9–10), and (C) denying him benefits for, at least, a closed period of disability from April

2005 to November 2006 due to his recurring hernias and need for multiple surgeries (*Id*.).

### A. ALJ's Consideration of Treating Physicians' Opinions

Plaintiff's first argument is that the ALJ improperly rejected the opinion of his treating physicians, Dr. Munoz and Dr. LeSueur. "The medical opinion of a claimant's treating physician is entitled to 'special weight.'" *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989) (quoting *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988)). If, as here, another doctor counters the treating physician's opinion, "the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record." *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)).[4] "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Embrey*, 849 F.2d at 421 (quotation omitted). Even so, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

In making this analysis, a treating physician's opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); 20 C.F.R. § 416.927(d). If the opinion is not well-supported by such techniques, or is inconsistent with other substantial evidence in the record, then the opinion will be weighed in light of several factors: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3)

---

[4] When a non-treating physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the non-treating physician's opinion is not substantial evidence on its own. *See Orn*, 495 F.3d at 632. If, however, the non-treating physician makes independent findings, then those independent findings are substantial evidence. *Id.* Nonetheless, the "substantial evidence" threshold necessary to reject the opinion of a treating physician can be reached by the opinion of even a non-examining physician in concert with an abundance of evidence in the record. *See Lester*, 81 F.3d at 831.

- 5 -

supportability by explanation and reference to relevant evidence, (4) consistency with the record as a whole, (5) specialization, and (6) any other factors tending to support or contradict the opinion. *Id.*

Plaintiff contends that the ALJ gave insufficient weight to the opinion of two treating physicians, Dr. Munoz[5] and Dr. LeSueur. Indeed, the ALJ states in his decision that "[w]ith regard to the opinion evidence, Dr. LeSueur's opinions, both dated July 11, 2006, regarding the claimant's ability to do work-related physical activities, is given little weight because the undersigned finds that such extreme limitations are not supported by the record as a whole." (R. at 12–13). Plaintiff contends that the ALJ should have afforded more weight to Dr. LeSueur's findings that claimant has a physical incapacity which prevents him from performing any substantially gainful employment and that he requires significant work restrictions as a result of his bilateral hernias and cervical spondylosis. (R. at 484). Because Dr. LeSueur's opinion is controverted by the opinions of other physicians, including another treating physician, the ALJ may reject this treating physician's opinions by offering specific and legitimate reasons supported by substantial evidence in the record.[6] *See Lester*, 81 F.3d at 830–31. The ALJ explicitly cites lack of supportability by the record as a whole as his reason for discounting Dr. LeSueur's opinion. (R. at 13); *see* 20 C.F.R. § 404.1527(d). The

---

[5] The Court rejects claimant's assertion that the ALJ did not afford sufficient weight to the opinion of Dr. Munoz because Plaintiff cites no part of the record to support his arguments with respect to Dr. Munoz's opinions regarding Plaintiff's work restrictions. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (rejecting claimant's argument where he "failed to argue this issue with any specificity in his briefing"). On the contrary, the ALJ's decision affords significant weight to Dr. Munoz's opinion by relying on Dr. Munoz's report, dated November 13, 2006, which indicated that "the claimant was doing well and was essentially asymptomatic after retroperitoneal repair of recurrent left inguinal hernia and femoral hernia performed on October 12, 2006." (R. at 12, 461). Both parties incorrectly attribute this statement to Dr. LeSueur rather than to Dr. Munoz. *See* Doc. 19 at 13; Doc. 20 at 1.

[6] To the extent certain opinions are not controverted by other physicians, the Court would nonetheless affirm because the ALJ offered clear and convincing reasons to reject Dr. LeSueur's opinion.

- 6 -

1  ALJ explained his specific and legitimate reasons by citing inconsistencies between Dr.
2  LeSueur's opinions and abundant evidence in the record.

3  The ALJ cited Dr. Hassman, who performed a consultative medical examination, and
4  concluded that the claimant showed no evidence of neurological impairment or cervical
5  radiculopathy and had a full range of motion of both upper extremities without pain and had
6  normal grip strength of both hands." (R. at 13, 442). The ALJ further relied on Dr.
7  Hassman's finding that claimant's hernia repair operations were successful and caused only
8  short-term limitations in his ability to function. (R. at 13, 461–62). In his examination with
9  Dr. Hassman, Plaintiff also demonstrated no crepitus or instability of the knees or ankles and
10 was able to bend at the knees and pick something up from the floor. (R. at 13, 442). Finally,
11 the ALJ relied on Plaintiff's disclosure to Dr. Hassman that he takes Vicodin as needed to
12 conclude that claimant does not take pain medication on a regular basis. (R. at 13, 441).

13 Aside from citing the findings of Dr. Hassman, the ALJ also afforded significant
14 weight to the conclusions of Dr. Fahlberg, the State agency medical consultant, who found
15 that the claimant had the residual capacity for medium work because his hernia was stable
16 and his back and neck pain did not appear very limiting. (R. at 13, 448–455). The ALJ also
17 relied on Dr. Fahlberg's finding that the claimant requires no ambulatory devices to walk.
18 (*Id.*). Notably, in addition to the opinions of these non-treating physicians, the ALJ also
19 considered the determination of Dr. Munoz, another treating physician, who found that
20 Plaintiff was essentially asymptomatic a month after his October 2006 hernia operation. (R.
21 at 13, 461). When there is an evidentiary conflict between medical opinions of equal weight,
22 such as between the two treating physicians in the instant case, the ALJ is entitled to resolve
23 such conflict. *See Magallanes v. Brown*, 881 F.2d 747, 750 (9th Cir. 1989).

24 Finally, the ALJ provided other detailed specific and legitimate reasons to conclude
25 that Plaintiff's limitations were not as extreme as Dr. LeSueur noted, including consideration
26 of claimant's daily activities. A claimant's daily activities provide a relevant basis for
27 rejecting a treating physician's testimony. *See Coley v. Astrue*, 2010 WL 3220300, at *14,
28 20 (D. Or. Aug. 12, 2010) (holding that the claimant's daily activities were inconsistent with

1 the treating physician's marked limitations) (citing *Rollins v. Massanari*, 261 F.3d 853, 856
2 (9th Cir. 2001)); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601–02 (9th Cir.
3 1999)). For example, claimant could travel, hitchhike, live independently, drive, prepare
4 meals, shop, and socialize with friends. Flesher's ability to perform these activities undercuts
5 Dr. LeSueur's opinions regarding his capabilities.

6 Because Dr. LeSueur's opinion was controverted, in part, by non-treating physician
7 opinions, the ALJ must have given specific and legitimate reasons supported by substantial
8 evidence in the record for rejecting Dr. LeSueur's opinions. *See Orn*, 495 F.3d at 632; *Lester*,
9 81 F.3d at 830; *Embrey*, 849 F.2d at 421. The ALJ has done so here. The conflicting
10 evidence discussed by the ALJ is supported by the record and could rationally be viewed as
11 substantial evidence inconsistent with Dr. LeSueur's RFC opinion. Weighing the evidence
12 is the province of the ALJ, and as long as the ALJ's inferences are reasonable this Court must
13 defer to them. *Batson*, 359 F.3d at 1198; *Andrews*, 53 F.3d at 1039.  Thus, the ALJ did not
14 err by affording less weight to Dr. LeSueur's opinion than to the other physicians' residual
15 functional capacity opinions.

16 **B.  ALJ's Interpretation of Evidence - Ability to Engage in Previous Work**

17 Plaintiff further contends that the ALJ misinterpreted the evidence presented regarding
18 the claimant's ability to engage in his previous work. (Doc. 15 at 9). Similar to his argument
19 regarding the ALJ's decision to afford little weight to the opinion of Dr. LeSueur, Plaintiff
20 again argues that Dr. LeSueur's July 11, 2006 findings on Plaintiff's physical limitations
21 should not have been discounted in favor of Dr. Fahlberg's opinions. (*Id.* at 9–10). As
22 previously discussed, the ALJ offered specific and legitimate reasons supported by
23 substantial evidence in the record for rejecting Dr. LeSueur's opinions. *See discussion supra*
24 section II.A. Additionally, Plaintiff argues that the ALJ disregarded the vocational expert's
25 testimony regarding claimant's ability to return to his previous work. However, the record
26 does not support such a contention. Rather, in response to a question from Plaintiff's
27 attorney, the vocational expert, Mr. Mitchell, indicated that if Plaintiff's claims about his
28 "lifting, standing, walking type capacities, [and] truncal movement capacities" were found

1  credible, then Plaintiff would have a sedentary capacity and would be unable to return to his
2  prior work. (R. at 37–38). The ALJ determined that Plaintiff's claims regarding the disabling
3  limitations of his severe impairments was not in fact credible. Thus, after reasonably
4  determining that Plaintiff could perform a limited range of medium work, the ALJ relied on
5  Mr. Mitchell's testimony that the work of a construction helper ranged from light to heavy
6  in exertional level to conclude that Plaintiff could continue his previous work at the light to
7  medium level. (R. at 13, 36). Because substantial evidence supports the ALJ's conclusion
8  that Plaintiff was not disabled, the Court does not disturb that decision.

### C. ALJ's Interpretation of Evidence - Closed Period of Disability

Finally, Plaintiff contends that even if he was not disabled through the time of the ALJ's decision, he was at least disabled for the shorter time period between April 2005 to November 2006 due to the recurrence of his hernias and need for multiple surgeries, and therefore, is entitled to a closed period of disability. (Doc. 15 at 9). The twenty-month time period Plaintiff points to corresponds roughly to the period in which Plaintiff underwent three hernia surgeries: April 2005 (R. at 338), March 2006 (R. at 195), and October 2006 (R. at 463). As an initial matter, under the Social Security program, a claimant may only collect benefits beginning in the month following his initial application. 20 C.F.R. § 416.335 (2010). In light of the fact that claimant did not file until April 12, 2006, he would be ineligible to collect for the first thirteen months of this period even if he were disabled. He would only be eligible for the final seven months.

Further, to be found disabled, a claimant must be physically or mentally "unable to engage in any substantial gainful activity . . . for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3). Substantial evidence supports the ALJ's implicit finding that Plaintiff was not disabled during this period. First, the ALJ notes that Plaintiff is able to engage in significant physical and mental activity, including living independently, traveling, hiking, driving, preparing meals, shopping and socializing with friends. (R. at 13). Additionally, the ALJ relies on Dr. Hassman's September 2006 examination of Plaintiff, which found that Plaintiff's hernia operations caused only short-term limitations in his ability

to function and that he had full range of motion of both upper extremities without pain. (R. at 442). After his left inguinal hernia surgery in April 2005, the record does not demonstrate that Plaintiff complained about severe groin pain again until January 2006. (R. at 415). Rather, his intervening doctors visits during this time involved complaints regarding his neck pains. (R. at 257, 418). Given that Plaintiff's argument regarding eligibility for a closed period of disability involves the disabling effects of his hernia surgeries, the law prohibits combining the effects of the hernias with the unrelated effects of his neck condition in order to reach the twelve-month requirement. *See* 20 C.F.R. § 416.922(a) ("We cannot combine two or more unrelated severe impairments to meet the 12-month duration test. If you have a severe impairment(s) and then develop another unrelated severe impairment(s) but neither one is expected to last for 12 months, we cannot find you disabled, even though the two impairments in combination last for 12 months."). Finally, the ALJ's decision notes that on October 20, 2006, eighteen days after Plaintiff's final surgery, Dr. Munoz found him to be "essentially asymptomatic." (R. at 462). Therefore, substantial evidence supports the ALJ's implicit finding that Plaintiff was not entitled to a closed period of disability from April 2005 to November 2006 due to his recurring hernias.

The ALJ made no error of law and there is substantial evidence to support the ALJ's denial of benefits.

**IT IS HEREBY ORDERED** that the ALJ's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** directing the Clerk of the Court to **TERMINATE** this matter.

DATED this 1st day of June, 2011.

/s/ A. Murray Snow
_____
G. Murray Snow
United States District Judge